UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: U.S. STRATEGIC CAPITAL ADVISORS LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No.: _____ |
| | : | |
| COMPASS GOLF LLC, L & J ACQUISITIONS LLC, L&J GOLF, LLC, 7TH YEAR LLC, CONQUEST COMMERCIAL FUNDING, LLC, CONQUEST COMMERCIAL DEVELOPMENT LLC, A&J GULF BLVD LLC, RAIMONDI & ASSOCIATES, LLC, JORGE E. MARTINEZ, ADRIANA E. CASTRILLO, LAWRENCE N. RAIMONDI, JR., DAVID BISCAN, MIKE MOSES, J. T. JENSEN, and JOHN DOE NUMBERS 1-5, | : : : : : : : : : : : : | DEMAND FOR JURY TRIAL |
| | : | |
| Defendants. | : | |
| _____ | : | |

## VERIFIED COMPLAINT FOR RACKETEERING, CIVIL CONSPIRACY, FRAUD, DECEIT, BREACH OF CONTRACT, AND FRAUDULENT TRANSFER

Comes now Plaintiff U.S. Strategic Capital Advisors LLC ("USSC"), by and through its counsel, and brings this Complaint for racketeering, civil conspiracy,

fraud, deceit, breach of contract, and fraudulent transfer against Defendants Compass Golf LLC ("Compass"), L & J Acquisitions LLC ("L&J"), L&J Golf, LLC ("Golf"), 7th Year, LLC ("7th Year"), Conquest Commercial Development LLC ("Development"), Conquest Commercial Funding, LLC ("Conquest"), A&J Gulf Blvd LLC ("A&J"), Jorge E. Martinez ("Martinez"), Adriana E. Castrillo ("Castrillo"), Raimondi & Associates, LLC ("R&A"), Lawrence N. Raimondi, Jr. ("Raimondi"), David Biscan ("Biscan"), Mike Moses ("Moses"), J. T. Jensen ("Jensen"), and John Doe Numbers 1-5 (collectively "Defendants"), and alleges as follows:

## I.    <u>NATURE OF THE CASE</u>

1.    This is an action alleging civil violations of the Federal Racketeer Influenced and Corrupt Organizations Act ("Federal RICO"), civil conspiracy, fraud, deceit, breach of contract, and fraudulent transfer, all arising from a scheme between and among Defendants that was designed and implemented to defraud USSC.

2.    This case arises from two loans aggregating $4.1 million (the "Frog Loans") that USSC, a private money lender, made in 2023 to Defendants Compass and L&J (collectively Compass and L&J"), which are two single-member limited liability companies that were owned and controlled by Martinez. The purpose of the Frog Loans was to refinance debt on and ostensibly make improvements to The Frog

Golf Club, an 18-hole public golf course and 4,000 square-foot clubhouse located in Villa Rica, Georgia ("The Frog"). As security for the Frog Loans, (i) Compass provided USSC with Security Deeds to The Frog's real property and UCC-1 Financing Statements on The Frog's personalty, and (ii) Martinez personally guaranteed the Frog Loans and pledged his equity ownership in both Compass and L&J. After Compass and L&J defaulted on the Frog Loans in November 2023, and failed to cure the defaults, USSC pursued its legal remedies, including completing a nonjudicial foreclosure on The Frog, obtaining a Deed Under Power to the Frog, and seeking confirmation of a deficiency judgment from the Paulding County Superior Court.

3.      USSC is also entitled to recover damages for breach of contract under USSC's loan agreements with Compass and L&J, Martinez's personal guarantees, and Martinez's securities pledge agreements.

4.      In the process of foreclosing on The Frog, USSC discovered that Compass, L&J, and Martinez made false statements, submitted falsified financial statements, and omitted to state material facts to obtain the Frog Loans.

5.      USSC further discovered that Martinez is a convicted felon involving crimes of moral turpitude and grand theft and currently is the subject of a Florida arrest warrant on charges of grand theft and fraud.

6.      In addition, USSC discovered that Compass, L&J, and Martinez had

diverted loan proceeds for unauthorized purposes, including (i) providing goods and services to other businesses controlled by Martinez, (ii) paying fraudulent invoices submitted by Martinez's associates, (iii) selling collateral without disclosure to USSC in violation of loan covenants, (iv) hiding or conveying collateral to affiliates controlled by Martinez, including family members, and (vi) buying exotic automobiles.

7.      Compass, L&J, Martinez, Golf, 7th Year, Conquest, Development, A&J, Castrillo, R&A, Raimondi, David Biscan, Mike Moses, J. T. Jensen, and John Doe Numbers 1-5 conspired through an unlawful and fraudulent scheme to induce USSC to make the Frog Loans and divert proceeds from the Frog Loans for the unauthorized purposes described herein (the "Martinez Funding Scheme").

8.      The Defendants (the "Martinez Enterprise") all knew that the loan proceeds would be diverted to support the Martinez Funding Scheme.

9.      As a result of the Martinez Funding Scheme, USSC has suffered monetary damages.

10.     By means of this lawsuit, USSC seeks that this Court find:

(i)      All Defendants jointly and severally liable pursuant to Federal RICO for treble the damages incurred by USSC due to Defendants' unlawful activity;

(ii)     All Defendants jointly and severally for civil conspiracy for fraud and deceit,

(iii)    Compass, L&J, and Martinez jointly and severally liable for breach of contracts,

(iv)    Compass, 7th Year, Martinez, R&A, and Raimondi jointly and severally liable for fraudulent transfer,

(v)    All Defendants jointly liable for attorneys' fees spent bringing this lawsuit, and

(vi)    All Defendants jointly and severally liable for $10,000,000 or an amount otherwise to be decided by a jury in the form of punitive damages for Defendants' illegal and fraudulent actions.

11.    USSC also intends to file a petition for prejudgment attachment, and an emergency ex parte motion against Compass, L&J, Martinez, Golf, 7th Year, Conquest, Development, A&J, and Castrillo for appointment of a receiver, an asset freeze, immediate access to business premises and the personal residences of Martinez and Castrillo, and permitting USSC to take expedited discovery as to the existence and location of assets and documents, and other equitable relief.

## II.    PARTIES

**PLAINTIFF**

12.    Plaintiff U.S. Strategic Capital Advisors LLC, ("USSC"), is a limited liability company organized and existing under the laws of the State of Georgia. USSC's principal place of business is located at 2604 Abbey Court, Alpharetta,

Fulton County, Georgia 30004.

**DEFENDANTS**

13.    Defendant Compass Golf LLC ("Compass") is a limited liability company organized and existing under the laws of the State of Delaware. Compass's principal place of business is located at 3254 Clubside View Court, Snellville, Gwinnett County, Georgia 30039. Compass can be served with process by delivering a copy of the Summons and Complaint to its registered agent, David Anton, 3180 North Point Pkwy, Building 100, Suite 103, Alpharetta, Fulton County, Georgia 30005. Compass is an affiliate that directly, or indirectly through one or more intermediaries, is controlled by Martinez.

14.    Defendant L & J Acquisitions LLC ("L&J") is a limited liability company organized and existing under the laws of the State of Wyoming and is authorized to do business in the State of Georgia. L&J's principal place of business is located at 3254 Clubside View Court, Snellville, Gwinnett County, Georgia 30039. L&J can be served with process by delivering a copy of the Summons and Complaint to its registered agent, David Anton, 3180 North Point Pkwy, Building 100, Suite 103, Alpharetta, GA 30005. L&J is an affiliate that directly, or indirectly through one or more intermediaries, is controlled by Martinez.

15.    Defendant L & J Golf, LLC ("Golf") is a limited liability company organized and existing under the laws of the State of Wyoming. and is authorized to

6

do business in the State of Georgia. Golf's principal place of business is located at 555 North Point Center East, Suite 400, Alpharetta, Fulton County, Georgia 30022. Golf can be served with process by delivering a copy of the Summons and Complaint to its registered agent, David Anton, 3180 North Point Pkwy, Building 100, Suite 103, Alpharetta, GA 30005. Golf is an affiliate that directly, or indirectly through one or more intermediaries, is controlled by Martinez.

16.    Defendant 7th Year LLC ("7th Year") is a limited liability company organized and existing under the laws of the State of Delaware and is authorized to do business in the State of Georgia. 7th Year's principal place of business is located at 221 North Broad Street, Suite 3A, Middletown, Delaware 19709. 7th Year can be served with process by delivering a copy of the Summons and Complaint to its registered agent, David Anton, 3180 North Point Pkwy, Building 100, Suite 103, Alpharetta, Fulton County, Georgia 30005. 7th Year is an affiliate that directly, or indirectly through one or more intermediaries, is controlled by Martinez.

17.    Defendant Conquest Commercial Development LLC ("Conquest") is a limited liability company organized and existing under the laws of the State of Georgia. Conquest's principal place of business is located at 9105 Old Southwick Pass, Alpharetta, Fulton County, Georgia 30022. Conquest can be served with process by delivering a copy of the Summons and Complaint to its registered agent, Republic Registered Agent LLC, 113 S. Perry Street, Suite 206, Lawrenceville,

Gwinnett County, Georgia 30046. Development is an affiliate that directly, or indirectly through one or more intermediaries, is controlled by Martinez.

18.     Defendant Conquest Commercial Funding, LLC ("Conquest") is a limited liability company organized and existing under the laws of the State of Delaware and is authorized to do business in the State of Georgia. Conquest's principal place of business is located at 555 North Point Center East, Suite 400, Alpharetta, Fulton County, Georgia, 30022. Conquest can be served with process by delivering a copy of the Summons and Complaint to its registered agent, David Anton, 3180 North Point Pkwy, Building 100, Suite 103, Alpharetta, Fulton County, Georgia 30005. Conquest is an affiliate that directly, or indirectly through one or more intermediaries, is controlled by Martinez.

19.     Defendant A&J Gulf Blvd LLC ("A&J") is a limited liability company organized and existing under the laws of the State of Florida.  A&J's principal place of business is located at 1150 NW 72nd Ave Tower, Suite 455 #4482, Miami, Florida 33126. A&J can be served with process by delivering a copy of the Summons and Complaint to its registered agent, Legalinc Corporate Services Inc., 476 Riverside Ave., Jacksonville, FL 32202. A&J is an affiliate that directly, or indirectly through one or more intermediaries, is controlled by Martinez.

20.     Defendant Jorge E. Martinez ("Martinez") is an individual resident of the State of Georgia and, on information and belief, is the sole member and

beneficial owner of the equity securities of both Compass and L&J. Martinez can be served with process by delivering a copy of the Summons and Complaint to him at 9105 Old Southwick Pass, Johns Creek, Fulton County, Georgia 30022, or at 8601 Gulf Boulevard St. Petersburg, Florida 33706.

21.    Defendant Adriana E. Castrillo ("Castrillo") is an individual resident of the State of Georgia and, on information and belief. is the wife of Martinez. Castrillo can be served with process by delivering a copy of the Summons and Complaint to her at 9105 Old Southwick Pass, Johns Creek, Fulton County, Georgia 30022, or at 8601 Gulf Boulevard St. Petersburg, Florida 33706. Castrillo is an affiliate that directly, or indirectly through one or more intermediaries, is controlled by Martinez.

22.    Defendant Raimondi & Associates, LLC ("R&A") is a limited liability company organized and existing under the laws of the State of Georgia.  R&A's principal place of business is located at 1301 Shiloh Road, NW, Unit 1520, Kennesaw, GA 30144.  R&A can be served with process by delivering a copy of the Summons and Complaint to its registered agent, Lawrence N. Raimondi, Jr., 3266 Cates Avenue, Brookhaven, Georgia 30319. R&A is a law firm that represents Compass, L&J, Golf, 7th Year, Conquest, Development, A&J, and Martinez personally. R&A is an affiliate that directly, or indirectly through one or more intermediaries, is controlled by Martinez.

23.    Defendant Lawrence N. Raimondi, Jr. ("Raimondi") is an individual

resident of the State of Georgia and, on information and belief is the sole member and beneficial owner of R&A. Raimondi can be served with process by delivering a copy of the Summons and Complaint to him at 3266 Cates Ave., NE, Brookhaven, Georgia 30319. Raimondi is an attorney licensed to practice law in the State of Georgia, R&A's principal, and Martinez's lawyer. Raimondi is an affiliate that directly, or indirectly through one or more intermediaries, is controlled by Martinez.

24.    Defendant David Biscan ("Biscan") is an individual resident of the State of Georgia and can be served with process by delivering a copy of the Summons and Complaint to him at 13625 Birmingham Highway, Alpharetta, Fulton County, Georgia 30004. Biscan is the Chief Operating Officer of Compass. Biscan is an affiliate that directly, or indirectly through one or more intermediaries, is controlled by Martinez.

25.    Defendant Mike Moses ("Moses") is an individual resident of the State of Georgia and can be served with process by delivering a copy of the Summons and Complaint to him at 1114 Forrest Walk, Roswell, Fulton County, Georgia 30075. Moses is the Director of Business Development of Compass. Moses is an affiliate that directly, or indirectly through one or more intermediaries, is controlled by Martinez.

26.    Defendant J. T. Jensen ("Jensen") is an individual resident of the State of Georgia and can be served with process by delivering a copy of the Summons and

Complaint to him at Jennings Mill Country Club, 1150 Chambers Court, Watkinsville, Oconee County, Georgia 30677. Jensen was the General Manager of The Frog golf course, and now is the General Manager of the Jennings Mill Country Club. Jensen is an affiliate that directly, or indirectly through one or more intermediaries, is controlled by Martinez.

27.     Defendants John Doe Numbers 1-5 are executives, officers, employees, or other agents of Compass, L&J, Golf, 7th Year, Conquest, Development, and A&J, who participated in the Martinez Enterprise, whose identities and whereabouts are currently unknown, and are subject to the jurisdiction and venue of this Court. John Doe Numbers 1-5 will be named and served with the Summons and Complaint if and when their respective identities are revealed. John Doe Numbers 1-5 are affiliates that directly, or indirectly through one or more intermediaries, are controlled by Martinez.

### III.     JURISDICTION AND VENUE

28.     The Court has subject-matter jurisdiction over the parties pursuant to 18 U.S.C. §§ 1964(c), 1962(a), (1962(d), and 28 U.S.C. §1331 because this action arises, in part, under Federal RICO.

29.     This Court also has subject-matter jurisdiction pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs.

30.    This Court has jurisdiction over Plaintiff's related state and common law claims pursuant to the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367.

31.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district. Venue is further proper in this District pursuant to 18 U.S.C. § 1965(a) because each Defendant is found and/or transacts his or its affairs in this District given each Defendant's participation in the Martinez Enterprise, as alleged above.

## IV.    FACTUAL BACKGROUND

### The Martinez Funding Scheme and Enterprise

32.    Defendant Jorge Martinez, the architect of the fraud against Plaintiff USSC, is a convicted felon who has skirted the law, if not evaded it altogether, since adulthood. In the State of Florida, beginning in 1990, at age 18, he pled nolo contendere to a felony charge of selling narcotics within 1,000 feet of a school. In 1998, he was arrested for larceny. In 2008, he was charged twice with felonies, resulting in his 2011 guilty plea for fraud and grand theft. *See* Martinez Florida Criminal History, attached hereto as Exhibit A.

33.    In late 2017 or early 2018, Martinez left Florida for the State of Georgia, shortly after a probable cause order was issued in October 2017, for his arrest on charges of grand theft and fraud. *See* Probable Cause Order in *State of*

*Florida vs. Jorge Martinez*, Orange County, Florida Ninth Judicial Circuit Court, Case Number 2017-CF-012898-A-O, attached hereto as <u>Exhibit B</u>. Supporting the Probable Cause Order was an investigation by the Orlando Police Department, alleging that from November 2013 through March 2014, Martinez swindled three churches and two individuals out of approximately $137,000 in multiple financing or schemes. *See* Orlando Police Department Field Report – Investigative Supplement dated February 29, 2016, attached hereto as <u>Exhibit C</u>. The Orange County, Florida Sheriff's Office may also have issued a warrant for his arrest on larceny and grand theft charges in March 2024. *See* <u>Exhibit A</u>, *supra*.

34.    In March 2018, Martinez formed Defendant Conquest, a single-member limited liability company, to buy and manage golf courses. Between 2019 and 2023, he raised approximately $16 million from 11 lenders, mostly in short-term debt financing at high interest rates, to purchase and refinance five golf course properties and develop real estate.

35.    The golf course properties are (i) Country Club of Gwinnett ("Gwinnett"), in Gwinnett County, Georgia, which Conquest purchased in 2019; (ii) Jennings Mill Country Club ("Jennings Mill") and Lane Creek Golf Club ("Lane Creek"), both in Oconee County, Georgia, which Conquest purchased in 2020; (iii) The Frog Golf Club ("The Frog"), in Paulding County, Georgia, which Conquest purchased in 2021; and (iv) Trenton Golf Club ("Trenton"), in Dade County,

Georgia, which Conquest purchased in 2022.

36.    Defendant Raimondi & Associates, Inc. ("R&A"), a law firm focusing on real estate and business transactional law, and Defendant Lawrence Raimondi, Jr. ("Raimondi"), represented Conquest in connection with these acquisitions, including obtaining title insurance on the real properties.

37.    On information and belief, almost immediately after obtaining debt financing for the purchase of golf courses, Martinez began diverting the loan proceeds to personal use, including the purchase in December 2018, of a five bedroom, six bath, 5,451 square foot house in Country Cub of the South for $875,000. In addition, he made the following automobile purchases, which were titled to his wife, Defendant Adriano E. Castrillo:

| Title Date | Vehicle | Price |
|---|---|---|
| 02/18/20 | 2015 Mercedes-Benz CLS 400 4Matic Sedan | $ 65,990 |
| 02/18/20 | 2015 Land Rover Range HSE Limited Edition SUV | $ 77,525 |
| 06/17/20 | 2010 Ferrari California Convertible | $192,000 |
| 09/23/20 | 2017 Porsche 911 Carrera/Carrera 4 Coupe | $ 89,400 |
| 11/17/20 | 2010 Ferrari California | $192,000 |
| 12/21/20 | 2011 BMW 328 XI SULEV Sedan | $ 36,600 |
| 01/25/21 | 2018 Porsche Panamera Sedan | $ 85,000 |

| 08/30/21 | 2021 Porsche 911 Carrera/Carrera 4 Convertible | $112,000 |
| 09/15/21 | 2021 Land Rover Range HSE Dynamic P525 SUV | $ 87,500 |
| 10/05/21 | 2018 Mercedes-Benz AMG Coupe | $112,400 |
| 11/01/21 | 2020 Lotus Evora GT Coupe | $ 96,950 |
| 10/11/21 | 2019 Audi Q8 Premium SUV | $ 67,400 |
| 01/10/22 | 2018 McLaren 570S Convertible | $208,800 |
| 03/14/22 | 2020 Porsche 911 Carrera S/4S Convertible | $126,100 |
| 04/25/22 | 2021 Porsche Boxter GTS/25[th] Anniversary Edition Convertible | $ 88,900 |
| 07/24/23 | 2021 Lamborghini Urus 4 Dr SUV | $218,009 |

On information and belief, Martinez also diverted loan proceeds obtained from other lenders for the golf courses to purchase these vehicles. and obtained from USSC for The Frog to purchase the Lamborghini.

38.    Because Martinez was converting large amounts of capital from the golf courses for personal use, Conquest was unable to (i) make sufficient capital expenditures that several lenders, including USSC, required to improve the golf courses, (ii) service the debt on the loans, (iii) repay the principal when the loans became due, or (iv) cover operating expenses. As a result, from 2020 to 2023, he refinanced the golf courses on multiple occasions, each time borrowing more debt while concealing to the new lenders, including USSC, the true extent of his financial

difficulties.

39.    As his financial condition worsened, Martinez also formed several new companies to which, on information and belief, he fraudulently siphoned money or transferred assets.

40.    One of these companies was L & J Golf LLC, which was formed on March 23, 2023, just five days after the closing of the first of the Frog Loans, in the amount of $3.5 million. Martinez formed Golf, with Castrillo as President, ostensibly to operate the golf pro shops at the golf courses, but actually, on information and belief, to divert money from the golf courses through fraudulent invoices and receipts.

41.    In addition, on information and belief, Castrillo submitted fraudulent invoices to The Frog for interior design goods and services.

42.    On information and belief, Martinez misappropriated money from both of USSC's Frog Loans to benefit himself personally, which included the purchase, on July 24, 2023, of the 2021 Lamborghini Urus SUV for $218,009. This purchase occurred only two weeks after the closing of the second of USSC's Frog Loans to Compass. On information and belief, Martinez used part of USSC's $600,000 loan to purchase the Lamborghini. Subsequently, Martinez posted a video on YouTube highlighting his experience as a golf course owner. The video features him outside a residence located at 8601 Gulf Boulevard in St. Petersburg Beach, Florida that is

titled to Defendant A&J Golf Blvd LLC ("A&J"), a Florida limited liability company. A Lamborghini and Ferrari appear in the background of the camera frame.

43.    On July 6, 2021, contemporaneously with executing the contract to acquire the 8601 Gulf Boulevard house for $759,900, Martinez formed A&J. On information and belief Martinez purchased the house through A&J to hide assets and evade creditors. The closing of the real estate purchase occurred on September 9, 2021, with funds that, on information and belief, Martinez diverted from Conquest.

44.    Among Conquest's creditors are SE Funding LLC ("SE") and Christine Speedy ("Speedy"). In January 2020, SE and Speedy loaned Conquest $2 million to purchase Jennings Mill. In August 2020, SE loaned Conquest $1.5 million to purchase Lane Creek (the "SE/Speedy Loans"). Conquest defaulted on the SE/Speedy Loans in 2021, litigation was initiated in July 2022, and settlement was reached in November 2022, obligating Conquest to pay SE $3.9 million and Speedy $1.7 million. Following another set of defaults under the settlement agreement, Speedy and SE entered consent judgments on February 17, 2023, and February 21, 2023, respectively, and recorded timely judgment liens against four of the golf course properties, including The Frog, in the county real estate indexes.

45.    R&A and Raimondi, who continued to represent Martinez, knew about the SE/Speedy Loans defaults, the litigation, the settlement agreement defaults, the consent judgments, and the recorded judgment liens.

46.    In addition to A&J, Martinez formed several other limited liability companies, including Defendants L&J, 7th Year, Compass, and Development.  On information and belief, Martinez formed L&J, 7th Year, Compass, and Development to misappropriate loan proceeds from previous financings, raise additional capital by misrepresenting material facts and omitting to state material facts, and evade creditors. The table below shows the dates he formed these new entities:

| Entity | Formation Date | State of Formation |
|---|---|---|
| Conquest | 03/05/2018 | Delaware |
| L&J | 03/10/20 | Wyoming |
| Golf | 07/06/21 | Florida |
| 7th Year | 10/03/22 | Delaware |
| Compass | 02/22/23 | Delaware |
| Development | 06/28/23 | Georgia |

47.    The table below shows the entities to which Martinez effectuated the transfer of the five golf courses and the dates of transfer:

| Transferor | Transferee | Date | Golf Courses | Consideration |
|---|---|---|---|---|
| Conquest | L&J | 12/20/22 | Gwinnett | $0.00 |
| L&J | Golf | 01/5/23 | Gwinnett | $0.00 |
| Golf | Compass | 01/05/23 | Gwinnett | $0.00 |

| Conquest | Compass | 02/22/23 | The Frog | $0.00 |
|---|---|---|---|---|
| Conquest | Compass | 09/12/23 | Trenton | $0.00 |
| Conquest | Compass | 09/12/23 | Lane Creek | $0.00 |
| Conquest | Compass | 09/12/23 | Jennings Mill | $0.00 |
| Compass | 7th Year | 02/02/24 | Jennings Mill | $0.00 |

48.    On information and belief, Conquest divested itself of the golf courses with the intent to hinder, delay, and defraud its creditors.

49.    On January 16, 2024, USSC notified Compass that it intended to exercise its rights under its Securities Pledge Agreement with Compass. *See* paragraph 83 *infra*. Thereupon, on information and belief, Martinez effectuated the transfer of Jennings Mill from Compass to 7th year to hinder, delay, and defraud USSC.

50.    R&A and Raimondi prepared the Limited Warranty Deeds, effectuating the transfers shown in the above table. The warranty deeds include the unusual disclaimers, "DEED PREPARATION ONLY NO TITLE EXAMINATION PERFORMED" and "THE CONVEYANCE IS EXPRESSLY SUBJECT TO ANY AND ALL EASEMENTS, RESTRICTIONS, COVENANTS, LIENS OR ENCUMBRANCES OF PUBLIC RECORD, AS WELL AS ANY SUCH MATTERS OF WHICH GRANTEE HAS KNOWLEDGE."

51.    However, according to the HUD Settlement Statements that R&A and

Raimondi delivered to USSC in connection with the closing of the $3.5 million loan on March 17, 2023, R&A charged $1,500 for a title examination performed by Charles Fomaro, III, P.C. Likewise, according to the HUD Settlement Statements that R&A and Raimondi delivered to USSC in connection with the closing of the $600,000 loan on July 10, 2023, Raimondi & Associates charged $3,500 for an attorney and title examination fee.

52.    On information and belief, either R&A and Raimondi did not perform these searches (or have these title searches performed), thereby misrepresenting the performance of these services to USSC on the HUD Settlement Statements, or they had the title searches performed but misrepresented on the Limited Warranty Deeds that they had not performed the title searches.

53.    On information and belief, R&A and Raimondi were complicit in Martinez's fraud, included the above disclaimers with full knowledge of the judgments against Conquest, and intended for the above disclaimers to insulate them from liability as co-conspirators in the Martinez Funding Scheme.

54.    Georgia is an "attorney state" regarding the issuance of title insurance policies, requiring that an attorney determine the validity of titles to real property, arrange for the issuance of title insurance, perform closings, and make disbursements. When USSC agreed to make the first of The Frog Loans to Compass, Martinez recommended that USSC engage, and USSC did, in fact, engage R&A and

Raimondi as the closing attorney.

55.    R&A and Raimondi should not have agreed to represent USSC because USSC's interests conflicted with those of Conquest, Compass, and Martinez, whom they also represented.

56.    When R&A transferred The Frog's title from Conquest to Compass, Raimondi did not inform USSC that Conquest had outstanding consent judgments arising from the SE/Speedy litigation that could negatively impact USSC's loan to Compass.

57.    Performing a title examination is customary when an attorney arranges for the issuance of a lender's title insurance policy on behalf of a client. USSC expected that R&A would perform a title examination on The Frog since USSC had retained R&A to obtain a lender's title insurance policy to protect it against any property loss or damage USSC might experience because of liens, encumbrances, or defects in the title to The Frog; however, R&A and Raimondi stated on the Limited Warranty Deeds that it did not perform a title search on The Frog. *See* paragraph 50 *supra*.

58.    On information and belief, R&A did not perform a title search on The Frog either before the USSC's $3.5 million loan to Compass on March 17, 2023, or its $600,000 loan to Compass on July 10, 2023, because Raimondi knew that SE/Speedy Loans defaults, and the ensuing litigation, settlement agreement defaults,

consent judgments, and judgment liens represented a cloud on The Frog's title. Hence, USSC relied on R&A to its detriment because Raimondi placed the interests of Martinez ahead of USCC's. R&A and Raimondi were complicit in Martinez's fraud by concealing material facts from USSC that might have dissuaded USSC from making The Frog Loans.

59.     As described above, Defendants conspired through the Martinez Funding Scheme; that is, the unlawful and fraudulent scheme to induce lenders like USSC to make loans to Martinez's other golf courses, and in particular to induce USSC to make the Frog Loans and divert proceeds from the Frog Loans for the unauthorized purposes described above.

60.     As a result, USSC has suffered damages in excess of $1.8 million, not including foreclosure, appraisal, and litigation costs, filing fees, and attorneys' fees, as a result of the Martinez Funding Scheme.

**The Frog Loans**

61.     As described previously, in 2023, USSC loaned Compass and L&J a total of $4.1 million in two separate loan transactions to refinance prior indebtedness on, and make improvements to the Premises, including converting the basement to an event venue with a state-of-the-art commercial kitchen. The first loan, which was for $3.5 million, occurred on March 17, 2023, pursuant to a Loan and Security Agreement and a Promissory Note dated March 17, 2023 (collectively, the "First

Loan Agreement and Note"). The second loan, which was for $600,000, occurred on July 10, 2023, pursuant to a Loan and Security Agreement and a Promissory Note dated July 10, 2023 (collectively, the "Second Loan Agreement and Note").

62.    Compass and L&J defaulted on their obligations under both the First Loan Agreement and Note and the Second Loan Agreement and Note.

63.    Martinez defaulted on his obligations under a Personal Guaranty Agreement dated March 17, 2023 (the "First Personal Guaranty") and a second Personal Guaranty Agreement dated July 10, 2023 (the "Second Personal Guaranty"). The First Personal Guaranty and Second Personal Guaranty are hereinafter referred to collectively as the "Personal Guarantees."

64.    Compass defaulted on its obligations under a Securities Pledge Agreement dated March 17, 2023 (the "First Securities Pledge Agreement") and Martinez has defaulted on his obligations under a Securities Pledge Agreement dated July 10, 2023 (the "Second Securities Pledge Agreement"). The First Securities Pledge Agreement and the Second Securities Pledge Agreement are hereinafter referred to collectively as the "Securities Pledge Agreements."

65.    As a result, USSC is entitled to enforce its rights under the First Loan Agreement and Note, the Second Loan Agreement and Note, the Personal Guarantees, and the Securities Pledge Agreements, as well as under Security Deeds filed in Paulding County, Georgia in April 2023 and August 2023, respectively, and

UCC-1 Financing Statements filed in the State of Georgia on March 20, 2023, and in the States of Delaware and Wyoming on December 12, 2023 (collectively, the "Loan Documents").

## First Loan Agreement and Note

66.     On March 17, 2023, USSC made a cash loan to Compass and L&J in the amount of $3,500,000.00 (the "$3.5 Million Loan" or "$3.5M Secured Indebtedness"), subject to the terms and conditions described in the First Loan Agreement and Note, which Compass and L&J and USSC signed on that date, copies of which are attached hereto as Exhibit D and Exhibit E, respectively.

67.     To secure the obligations of Compass and L&J under the First Loan Agreement and Note, USSC required that the Defendants provide the collateral and security interests delineated in subparagraphs (i) through (iv) below:

(i)     186 acres of real property titled to Compass and all improvements and personalty thereon described in a Deed to Secure Debt and Assignment of Rents from Compass to USSC, dated March 17, 2023, and recorded April 11, 2023, in Deed Book 4921, Pages 96 - 119, Paulding County, Georgia Records, a copy of which is attached hereto as Exhibit F (the "First Security Deed");

(ii)    Personal property titled to Compass, which is described in the First Loan Agreement and in the UCC-1 Financing Statements filed with the State of Georgia on March 20, 2023, the State of Delaware on December 12, 2023, and the

24

State of Wyoming on December 14, 2023, copies of which are attached hereto as Exhibit G, Exhibit H, and Exhibit I, respectively (the "UCC-1 Financing Statements");

(iii)    The pledge of equity securities beneficially owned by Martinez described in the Securities Pledge Agreement from Compass to USSC, dated March 17, 2023, a copy of which is attached hereto as Exhibit J (the "First Securities Pledge Agreement"); and

(iv)    The personal guaranty of Martinez for the prompt and punctual payment of the indebtedness due under the First Loan Agreement and Note described in the Personal Guaranty Agreement from Martinez to USSC, dated March 17, 2023, a copy of which is attached hereto as Exhibit K (the "First Personal Guaranty").

The First Loan Agreement and Note, the First Security Agreement, the Financing Statements, the First Securities Pledge Agreement, and the First Personal Guaranty are hereinafter referred to collectively as the "First Loan Documents."

### *First Loan Default*

*Default Under First Loan Agreement and Note and First Security Deed*

68.    Pursuant to the First Loan Agreement and Note and the First Security Deed, Compass and L&J absolutely, unconditionally, and irrevocably agreed to make (i) monthly payments of accrued interest beginning on April 15, 2023, and ending on September 15, 2024, and (ii) monthly payments of principal plus accrued

interest beginning on October 15, 2024, and ending on September 15, 2025, upon which date the entire unpaid principal balance of the First Note and all accrued and unpaid interest would be due and payable.

69.     The First Loan Agreement and Note and the First Security Deed further provide that, in the event Compass and L&J fail to pay any monthly installment due under the First Loan Agreement and Note on the due date thereof or within 10 days after notice provided to Compass and L&J by USSC, USSC is entitled to declare the entire unpaid balance of the First Note to be immediately due and payable, and to further exercise any and all rights and remedies that it may have under the First Loan Documents, including the right to collect the amount due and owing by suit.

70.     Compass and L&J breached the First Loan Agreement and Note and the First Security Deed by, among other things, failing to satisfy their payment obligations thereunder by failing to make certain remittances due in November 2023.

71.     On December 12, 2023, USSC sent a written notice to Compass and L&J that they had breached their obligations and were in default under the First Loan Agreement and the other First Loan Documents (the "First Default Notice"). A copy of the First Default Notice is attached hereto as Exhibit L.

72.     In addition to failing to make certain payments due in November 2023 payments, Compass and L&J also failed to make the payments that were due on

December 15, 2023, January 15, 2024, and February 15, 2024.

73.    On January 16, 2024, USSC sent a written notice to Compass and L&J that they had failed to cure their default under the First Loan Agreement and Note and the First Security Deed, and USSC was exercising its right to declare the entire debt to be immediately due and payable. *See* Letter to David Anton, Esq., dated January 16, 2024, a copy of which is attached hereto as Exhibit M.

74.    As of April 1, 2024, the entire debt that is immediately due and payable under the First Loan Documents, exclusive of attorneys' fees to which USSC will be entitled as noted herein, is as follows:

| First Loan Indebtedness (as of 04/01/24) | |
|---|---:|
| Principal | $3,500,000.00 |
| Accrued Interest | 233,333.34 |
| Default Interest | 116,666.66 |
| Monitoring Fees | 2,500.00 |
| Late Fees | 9,433.33 |
| **Total** | **$3,861,933.33** |

*Default Under First Personal Guaranty*

75.    Pursuant to the First Personal Guaranty, Martinez absolutely, unconditionally, and irrevocably agreed to guarantee the payment obligations of

Compass and L&J under the First Loan Agreement.

76.    On January 16, 2024, USSC sent a written notice to Martinez that Compass and L&J had failed to cure their default under the First Loan Agreement, and that USSC reserved any and all of its rights and remedies under the First Loan Documents, including, without limitation, the First Personal Guaranty. *See* <u>Exhibit K</u> *supra*.

77.    Martinez has breached the First Personal Guaranty by, among other things, failing to satisfy his payment obligations thereunder as a result of Compass and L&J's default under the First Loan Agreement.

*Default Under First Securities Pledge Agreement*

78.    Martinez is the beneficial owner of all of the equity securities issued by Compass.

79.    Under the First Securities Pledge Agreement, Compass granted USSC a lien and security interest in all the equity ownership in Compass beneficially held by Martinez (the "Compass Pledged Securities").

80.    USSC has full power and authority upon a default under the First Loan Agreement to sell Compass Pledged Securities, with or without any previous demands or demand of performance or, to the extent permitted by law, notice, or advertisement, either at public or private sale on such terms and price as USSC may reasonably deem commercially fair free from any claim or right of redemption by

Compass or Martinez.

81.    USSC is entitled to exclusive possession of all of the certificates representing Compass Pledged Securities, together with properly executed securities powers endorsed in blank, under the terms of the First Securities Pledge Agreement as security for payment of the $3.5 Million Loan.

82.    Compass and Martinez have retained physical possession of all of the certificates representing Martinez's beneficial ownership of the equity securities (the "Compass Certificates") without authority to do so.

83.    On January 16, 2024, USSC demanded that Compass and Martinez deliver physical possession of Compass Certificates to USSC by no later than Thursday, January 18, 2024. *See* Exhibit M *supra*.

84.    Compass and Martinez have ignored USSC's demand to deliver Compass Certificates and, are in default under the First Securities Pledge Agreement, among and in addition to the other events of default by Compass and Martinez that are described in this Complaint.

## Second Loan Agreement and Note

85.    On July 10, 2023, USSC made an additional cash loan to Compass and L&J in the amount of $600,000.00 (the "$600,000 Loan" or "$600,000 Secured Indebtedness"), subject to the terms and conditions described in the Second Loan Agreement and Note, which Compass and L&J and USSC signed on that date, copies

of which are attached hereto as <u>Exhibit N</u> and <u>Exhibit O</u>, respectively.

86.     To secure the obligations of Compass and L&J under the Second Loan Agreement and Note, USSC required that the Defendants provide the collateral and security interests delineated in subparagraphs (i). through (iv) below:

(i)     186 acres of real property titled to Compass and all improvements and personalty thereon described in a Deed to Secure Debt and Assignment of Rents from Compass to USSC, dated July 10, 2023, and recorded August 25, 2023, in Deed Book 4983, Pages 356 - 379, Paulding County, Georgia Records, a copy of which is attached hereto as <u>Exhibit P</u> (the "Second Security Deed");

(ii)     Personal property titled to Compass, which is described in the Second Loan Agreement and in the UCC-1 Financing Statements. *See* <u>Exhibit N</u> and <u>Exhibit Q</u>, *supra*;

(iii)     The personal guaranty of Martinez for the prompt and punctual payment of the indebtedness due under the Second Loan Agreement and Note described in the Personal Guaranty Agreement from Martinez to USSC, dated July 10, 2023, a copy of which is attached hereto as <u>Exhibit R</u> (the "Second Personal Guaranty"); and

(iv)     The pledge of equity securities beneficially owned by Martinez described in the Securities Pledge Agreement from Compass and L&J to USSC, dated July 10, 2023, a copy of which is attached hereto as <u>Exhibit S</u> (the "Second

Securities Pledge Agreement").

The Second Loan Agreement and Note, the Second Security Agreement, the Financing Statements, the Second Securities Pledge Agreement, and the Second Personal Guaranty are hereinafter referred to collectively as the "Second Loan Documents."

### Second Loan Default

*Default Under Second Loan Agreement and Note and Second Security Deed*

87.    Pursuant to the Second Loan Agreement, the Second Note, and the Second Security Deed, Compass and L&J absolutely, unconditionally, and irrevocably agreed to make monthly payments of principal and accrued interest beginning on August 15, 2023, and ending on January 10, 2026, upon which date the entire unpaid principal balance of the Second Note and all accrued and unpaid interest would be due and payable.

88.    The Second Loan Agreement and Note and the Second Security Deed further provide that, in the event Compass and L&J fail to pay any monthly installment due under the Second Loan Agreement and Note on the due date thereof or within 10 days after notice provided to Compass and L&J by USSC, USSC is entitled to (i) declare the entire unpaid balance of the Second Note to be immediately due and payable and (ii) further exercise any and all rights and remedies that it may have under the Second Loan Documents, including the right to collect the amount

due and owing by suit.

89.    On January 16, 2024, USSC sent a written notice to Compass and L&J that they had breached their obligations and were in default under the Second Loan Agreement and the other Second Loan Documents (the "Second Default Notice") and that the following sums were due to USSC, exclusive of attorneys' fees , in order for Compass and L&J to cure the default:

| Amount Due to Cure Default on Second Loan Documents (as of 01/15/24) | |
| --- | --- |
| 11/15/23, 12/15/23, & 1/15/24 Principal Payments | $54,610.66 |
| 12/15/23 & 1/15/24 Monitoring Fees | 1,000.00 |
| 11/15/23, 12/15/23, & 1/15/24 Regular Interest Payments | 14,610.66 |
| 11/15/23, 12/15/23, & 1/15/24 Default Interest Payments | 7,246.94 |
| 12/15/23 & 1/15/24 Late Fees | 5,482.22 |
| **Total** | **$82,950.48** |

A copy of the Second Default Notice is attached hereto as Exhibit T.

90.    In addition to failing to make the above payments, Compass and L&J also failed to make the payments that were due on February 15, 2024.

91.    On January 30, 2024, USSC sent a written notice to Compass and L&J's attorney, copying Compass and L&J and Martinez, stating that Compass and L&J had failed to cure their default under the Second Loan Agreement and Note and

the Second Security Deed, and USSC was exercising its right to declare the entire debt to be immediately due and payable. *See* Letter to David Anton, Esq., dated January 30, 2024, a copy of which is attached hereto as <u>Exhibit U</u>.

92.    As of April 1, 2024, the entire debt that is immediately due and payable under the Second Loan Documents, exclusive of attorneys' fees to which USSC will be entitled as noted herein, is as follows:

| Second Loan Indebtedness (as of 04/01/24) | |
| --- | --- |
| Principal | $535,117.33 |
| Accrued Interest | 32,820.54 |
| Default Interest | 16,410.25 |
| Monitoring Fees | 2,000.00 |
| Late Fees | 5,450.22 |
| **Total** | **$591,798.34** |

*Default Under Second Personal Guaranty*

93.    Pursuant to the Second Personal Guaranty, Martinez unconditionally and irrevocably agreed to guarantee Compass and L&J's payment obligations under the Second Loan Agreement.

94.    Martinez has breached the Second Personal Guaranty by failing to satisfy his payment obligations thereunder, among other things, as a result of

Compass and L&J's default under the Second Loan Agreement.

*Default Under Second Securities Pledge Agreement*

95.     Martinez is the beneficial owner of all of the equity securities issued by L&J, in addition to being the beneficial owners of all of the equity securities issued by Compass.

96.     Under the Second Securities Pledge Agreement, Martinez granted USSC a lien and security interest in all his ownership in both Compass and L&J beneficially held by Martinez (the "Compass/L&J Pledged Securities").

97.     USSC has full power and authority upon a default under the Second Loan Agreement to sell Compass/L&J Pledged Securities, with or without any previous demands or demand of performance or, to the extent permitted by law, notice, or advertisement, either at public or private sale on such terms and price as USSC may reasonably deem commercially fair free from any claim or right of redemption by Compass, L&J, or Martinez.

98.     USSC is entitled to exclusive possession of all of the certificates representing Compass/L&J Pledged Securities (the "Membership Certificates"), together with properly executed securities powers endorsed in blank, under the terms of the Second Securities Pledge Agreement as security for payment of the $600,000 Loan.

99.     Compass, L&J, and Martinez have retained physical possession of all

of the securities certificates representing Martinez's beneficial ownership of the equity securities (the "Membership Certificates") without authority to do so.

100.   On January 17, 2024, USSC demanded that Compass and Martinez deliver physical possession of these Membership Certificates to USSC by no later than Monday, January 22, 2024. *See* Letter to David Anton, Esq., dated January 17, 2024, a copy of which is attached hereto as <u>Exhibit V</u>.

101.   Compass, L&J, and Martinez have ignored USSC's demand to deliver the Membership Certificates and, are in default under the Second Securities Pledge Agreement, among and in addition to the other events of default by Compass, L&J, and Martinez that are described in this Complaint.

### Foreclosure of The Frog

102.   On or about January 30, 2024, USSC, under and by virtue of a Power of Sale contained in the Deeds to Secure Debt, commenced a nonjudicial foreclosure of The Frog.

103.   On March 5, 2024, The Frog was sold at a public auction on the steps of highest bidder for cash on the steps of the Paulding County Courthouse.

104.   USSC bid $2.7 million for The Frog, which, on information and belief, represents The Frog's fair market value.

105.   USSC was the sole bidder for The Frog, and its bid was the winning bid.

106.   On March 8, 2024, pursuant to O.C.G.A. § 44-14-160, USSC filed a Deed Under Power of Sale in connection with this foreclosure, recorded in Paulding County at Deed Book 5055, Page 710-719.

107.   Pursuant to O.C.G.A. § 44-14-161, USSC will report the sale to the judge of the Paulding County Superior Court for confirmation and approval within 30 days of the sale, on or before April 4, 2024.

108.   On information and belief, USSC is entitled to a deficiency judgment of not less than $1.8 million.

**Fraud, Theft, and Misappropriation**

***Fabricating a Wire Transfer***

109.   On December 29, 2023, following the defaults by Compass and L&J on its November 2023 and December 2023 loan payments to USSC, David Biscan, Chief Operating Officer of Compass sent an email to USSC showing that, to cure the defaults, Compass had authorized a $66,000 wire transfer from Compass's bank account at Bank of America for deposit to USSC's bank account on January 2, 2024. *See* email attached hereto as Exhibit W.

110.   On January 3, 2024, USSC notified Martinez that USSC had not received the wire and asked if he had canceled it. In response, on the same date, Martinez responded, "Of course not I will call now to see." *See* Exhibit W *supra*.

111.   On January 4, 2024, USSC sent Martinez an email stating, "you guys

36

sent an email with information from a federally chartered bank showing that a wire will hit our account on January 2nd. It has not hit our account. You said you did not cancel the wire. Why don't you explain to me what happened. I must be confused by how banks work." *See* <u>Exhibit W</u> *supra*.

112.   Martinez did not respond to USSC's January 4th email. On information and belief, Martinez lied in his January 3rd email when he said he had not canceled the wire, since USSC never received the $66,000 wire transfer.

### *Cooking The Frog's Books*

113.   On information and belief, Compass and L&J and Martinez have fraudulently shifted certain expense items to The Frog from four other golf courses to prop up the financial performance of the other golf courses to the detriment of The Frog's financial performance.

114.   For example, over a four-month period from July 2023 and October 2023, The Frog's payroll doubled, while the other golf courses had almost $0 payroll. *See* Compass Golf, LLC Profit and Loss Statements, January 1 – November 30, 2023, attached hereto as <u>Exhibit X</u>.

115.   By shifting the payroll expenses of the other four courses to The Frog Golf Club, the aforementioned Profit and Loss Statements reflect that, of the five golf courses owned by the entities Martinez controlled, The Frog went from #2 to #5 in profitability in that four-month period. *See* <u>Exhibit X</u> *supra*.

116.   On information and belief, the aforementioned Profit and Loss Statements show that Compass and L&J and Martinez are "cooking the books" by engaging in financial chicanery with the intent to defraud Plaintiff USSC.

### *Looting The Frog*

117.   Based on information and belief, the Defendants removed physical assets located at The Frog to the Defendants' other golf clubs to reduce The Frog's value and enhance the value of the other golf clubs.

118.   Supporting this information and belief are reports received by USSC from members of The Frog that Defendants removed security cameras from The Frog premises prior to the foreclosure that were intended to prevent activities of theft, vandalism, or break-ins and protect The Frog from liability.

119.   USSC has perfected security interests in the physical assets located at The Frog. Removing physical assets from The Frog in the manner described above represents not only a breach of contract but a misappropriation of assets.

120.   On March 4, 2024, an individual who identified himself as a member of The Frog, sent an email both to J. T. Jensen, who is identified on Compass's website as Compass's General Manager, and the entire membership of The Frog. A copy of this email is attached hereto as Exhibit Y.

121.   The March 4, 2024 email addressed multiple issues with The Frog's operation and finances, including, but not limited to the following:

(i)    As of March 4, 2024, The Frog owed over $27,000 in past-due lease payments for our golf carts at The Frog, including over $11,000 of past-due payments over 90 days old, and no payments at all for October and November 2023;

(ii)    Multiple instances of unpaid bills, including a flag repair bill over five months, a bill from Adidas for approximately $14,000 from October 2023, a $12,000 bill with Callaway Golf;

(iii)    Unpaid utility bills since December 2023, including unpaid trash service electric service, and water service invoices; and

(iv)    At least eight employees had their last paychecks bounce, and bounced paychecks was a common occurrence since last summer.

### *Attempted Sales of the Other Golf Courses*

122.    Martinez continues, with impunity and without authority, to exercise power and dominion over Compass, notwithstanding his default and the default of Compass under the First Securities Pledge Agreement and the Second Securities Pledge Agreement.

123.    Martinez scheduled an online auction on March 20, 2024, to sell both The Country Club of Gwinnett and Lane Creek Golf Club, which are titled to Compass, although because of the defaults under the First Securities Pledge Agreement and the Second Securities Pledge Agreement, Martinez was without authority to authorize the two auctions.

124.   After USSC notified the listing agent and auctioneer that Martinez did not have the authority to conduct these sales, the auctions were canceled.

125.   Martinez has also listed Trenton, which is titled to Compass, for sale, in contravention of the negative covenants under the Loan Documents.

126.   Martinez has also listed Jennings Mill for sale in contravention of the negative covenants under the Loan Documents, which, until it was fraudulently transferred to 7th Year on September 12, 2023, was titled to Compass. *See* paragraph 49 *supra* and paragraphs 127-130 *infra*.

### *Fraudulent Conveyance of Compass Assets to 7th Year*

127.   On September 12, 2023, CCS executed a Limited Warranty Deed, recorded September 15, 2023, at Deed Book 1750, Page 36, Oconee County, Georgia records, conveying Jennings Mill to Compass for no consideration. A copy of the Limited Warranty Deed and accompanying PT-61 are attached hereto collected as Exhibit Z.

128.   On February 2, 2024, well after USSC notified Compass and Martinez of the defaults under Loan Agreements and Notes, the Deeds to Secure Debt, the Securities Pledge Agreements, and the Personal Guaranty Agreements, Compass executed a Limited Warranty Deed, recorded February 5, 2024, at Deed Book 1761, Page 424, Oconee County, Georgia records, conveying Jennings Mill to 7th Year for no consideration. A copy of the Limited Warranty Deed and accompanying PT-61

are attached hereto collected as <u>Exhibit AA</u>.

129.    Based on information and belief, Martinez, who beneficially owns 100% of the equity securities of 7th Year, effectuated the title transfer of Jennings Mill from Compass to 7th Year to reduce USSC's recovery of damages under the Securities Pledge Agreements.

130.    The transfer of Jennings Mill to 7th Year is a fraudulent conveyance.

***Current Debt Owed by Defendants Arising from Breach of Contracts***

131.    Martinez, Compass, and L&J, as debtors, are currently indebted to USSC, as a secured creditor, in an amount of to be determined at trial, but not less than One Million Eight Hundred Thousand and no/100 Dollars ($1,800,000).

**COUNT I**

**Federal RICO 18 U.S.C. § 1964(c)**

**(as to All Defendants)**

132.    Plaintiff USSC incorporates by reference and realleges paragraphs 1 through 131 set forth above.

133.    USSC alleges that Defendants' conduct, and the conduct of each Defendant named herein, constitutes racketeering as set forth in 18 U.S.C. § 1964(c).

Specifically, Congress has defined "racketeering" to include wire fraud, or committing fraud by means of electronic transmissions over wire.

134.   As detailed below, USSC alleges three different causes of action for federal RICO violations. In summary, Section 1964(c) provides relief against parties who engage in a pattern of racketeering activity, Section 1962(a) provides relief against parties who use income generated through a pattern of racketeering activity, and Section 1962(d) provides relief against those who conspire to violate the racketeering laws. Defendants are liable under each of these three sections of the statute.

135.   18 U.S.C. § 1964(c) allows "any person injured in his business or property by reason of a violation of section 1962 of this chapter" to "sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . .."

136.   18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct

of such enterprise's affairs through a pattern of racketeering activity . . .. " 18 U.S.C. § 1962(c).

137.    Each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3) because each Defendant is capable of holding, and does hold, "a legal or beneficial interest in property."

138.    Defendants' activities include at least two acts of racketeering activity since 2020.

139.    Accordingly, Defendants' conduct constitutes a "pattern" of racketeering activity under 18 U.S.C. § 1961(5), as follows:

(i)    One such act took place on March 10, 2020, when Martinez, in furtherance of the activities of the Martinez Enterprise, falsely and fraudulently used interstate wires to form L&J for the purpose of conducting the Martinez Funding Scheme.

(ii)    Another such act took place on July 6, 2021, when Martinez, in furtherance of the activities of the Martinez Enterprise, falsely and fraudulently used interstate wires to form Golf for the purpose of conducting the Martinez Funding Scheme.

(iii)    Another such act took place on September 9, 2021, when A&G, in furtherance of the activities of the Martinez Enterprise, falsely and fraudulently used interstate wires to close the purchase of 8601 Gulf Boulevard in St. Petersburg,

Florida with funds Martinez misappropriated from Conquest for the purpose of conducting the Martinez Funding Scheme.

(iv)    Another such act took place on October 3, 2022, when Martinez, in furtherance of the activities of the Martinez Enterprise, falsely and fraudulently used interstate wires to form Golf for the purpose of conducting the Martinez Funding Scheme.

(v)    Another such act took place on January 5, 2023, when L&J, in furtherance of the activities of the Martinez Enterprise, falsely and fraudulently used interstate wires to transfer to Gwinnett to Golf for the purpose of conducting the Martinez Funding Scheme.

(vi)    Another such act took place on February 22, 2023, when Martinez, in furtherance of the activities of the Martinez Enterprise, falsely and fraudulently used interstate wires to form Compass for the purpose of conducting the Martinez Funding Scheme.

(vii)    Another such act took place on March 17, 2023, when Compass, L&J, and Martinez, below, falsely, and fraudulently used interstate wires to obtain the first of The Frog Loans for the purpose of conducting the Martinez Funding Scheme.

(viii) Another such act took place on June 28, 2023, when Martinez, in furtherance of the activities of the Martinez Enterprise, falsely and fraudulently used interstate wires to form Development for the purpose of conducting the Martinez

Funding Scheme.

(ix)    Another such act took place on July 10, 2023, when Compass, L&J, and Martinez, below, falsely, and fraudulently used interstate wires to obtain the second of The Frog Loans for the purpose of conducting the Martinez Funding Scheme.

(x)    Another such act took place on July 24, 2023, when Castrillo, in furtherance of the activities of the Martinez Enterprise, falsely and fraudulently used interstate wires to acquire title to the 2021 Lamborghini Urus using funds misappropriated from The Frog Loans and from other lenders for the purpose of conducting the Martinez Funding Scheme.

(xi)    Another such act took place on December 29, 2023, and on January 3, 2024, when Martinez, in furtherance of the activities of the Martinez Enterprise, falsely and fraudulently used interstate wires to represent to USSC that Compass had paid $66,000 to USSC to cure the payment defaults of Compass and L&J in November and December 2023 for the purpose of conducting the Martinez Funding Scheme.

(xii)    Another such act took place on February 2, 2024, when Compass, in furtherance of the activities of the Martinez Enterprise, falsely and fraudulently used interstate wires to transfer title to Jennings Mill to 7th Year for the purpose of conducting the Martinez Funding Scheme.

45

(xiii)  Another such act took place on February 2, 2024, when R&A and Raimondi, in furtherance of the activities of the Martinez Enterprise, falsely and fraudulently used interstate wires to effectuate the fraudulent transfer of title from Compass to 7th Year for the purpose of conducting the Martinez Funding Scheme.

(xiv)  Another such act took place on multiple occasions when Conquest, Compass, L&J, and Martinez, in furtherance of the activities of the Martinez Enterprise, falsely and fraudulently used interstate wires to submit fraudulent financial statements to USSC for the purpose of conducting the Martinez Funding Scheme.

(xv)  Another such act took place on multiple occasions when Golf and Castrillo, in furtherance of the activities of the Martinez Enterprise, falsely and fraudulently used interstate wires to submit fraudulent invoices and receipts to Compass and The Frog for the purpose of conducting the Martinez Funding Scheme.

(xvi)  Another such act took place on multiple occasions when Development, in furtherance of the activities of the Martinez Enterprise, falsely and fraudulently used interstate wires to fund its operations with proceeds Martinez misappropriated from The Frog Loans and from other lenders for the purpose of conducting the Martinez Funding Scheme.

140.  All of these acts were continuous from March 10, 2020, through the date hereof.

141.   At all times relevant hereto, beginning on or around March 10, 2020, and continuing through the date hereof, each Defendant from time to time conducted and participated in the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

142.   On or around March 10, 2020, Martinez, L&J, Castrillo, R&A, and Raimondi formed an association-in-fact enterprise, described herein as the Martinez Enterprise, within the meaning of 18 U.S.C. § 1961(4). Golf, 7th Year, Compass, and Development joined the Martinez Enterprise on July 6, 2021, October 3, 2022, February 22, 23, and June 28, 2023, respectively.

143.   The Martinez Enterprise consists of a group of "persons" associated together for the common purpose of intentionally and willfully defrauding USSC by creating and conducting a scheme to fraudulently induce USSC to extend loans to Compass and L&J.

144.   The Martinez Enterprise is an ongoing organization that functions as a continuing unit. The Martinez Enterprise was created and used as a tool to effectuate Defendants' pattern of racketeering activity.

145.   All Defendants agreed to and did conduct and participate in the conduct of the Martinez Enterprise's affairs through a pattern of racketeering activity including wire fraud as defined by 18 U.S.C. § 1343, and for the unlawful purpose of intentionally defrauding USSC.

146.    The wire fraud committed by Defendants is based on a scheme developed and carried out by the Martinez Enterprise wherein Defendant Martinez fraudulently used the interstate wires) as described in paragraph 139.

147.    USSC was deceived by the Martinez Enterprise and the Martinez Funding Scheme.

148.    Defendants conducted the Martinez Enterprise intentionally, with full knowledge of the negative consequences to USSC.

149.    The Martinez Funding Scheme was fraudulent.

150.    Defendants used the Internet and other electronic facilities to carry out the Martinez Funding Scheme and to conceal their ongoing fraudulent activities.

151.    At all times discussed herein, Defendants have been involved in a plan to scheme or defraud; have had the intent to defraud and have willfully participated in the scheme to defraud with actual knowledge of its fraudulent nature and with specific intent to defraud; and could have reasonably foreseen that interstate wires would be used; and actually used interstate wires to further Defendants' scheme.

152.    The Martinez Enterprise engaged in and affected interstate commerce by way of said wire fraud.

153.    The wire transmissions described herein were made in furtherance of Defendants' scheme and common course of conduct.

154.    To achieve their common goals, Defendants knowingly and willfully

concealed from USSC, the unlawfulness of the conduct of Conquest, Compass, L&J, Golf, 7th Year, A&J, Development, Castrillo, R&A, Raimondi, and John Doe Numbers 1-5, which was committed at the instruction of, and through the directions of, Martinez.

155.   To achieve their common goals, Defendants knowingly and willfully concealed from USSC the unlawfulness of the conduct of Conquest, Compass, L&J, Golf, 7th Year, A&J, Development, Castrillo, R&A, Raimondi, and John Doe Numbers 1-5, which was committed at the instruction of, and through the directions of, Martinez.

156.   As a direct and proximate consequence of the conduct of Defendants and each of them as alleged herein, USSC has been injured in its business and property, causing USSC to suffer monetary damages in an amount not less than $1.8 million, said damages to be proven at the time of trial.

157.   Because of Defendants' violations of 18 U.S.C. § 1964(c), Defendants are liable to USSC for three times the damages USSC has sustained, plus the cost of this suit, including reasonable attorneys' fees.

## COUNT II

## Federal RICO 18 U.S.C. § 1962(a)

## (as to All Defendants)

158.   Plaintiff USSC incorporates by reference and realleges paragraphs 1

through 157 set forth above.

159.  18 U.S.C. § 1962(a) makes it "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(a).

160.  As alleged in Count I, each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3).

161.  As alleged in Count I, Defendants' conduct constitutes a "pattern" of racketeering activity. 18 U.S.C. § 1961(5).

162.  At all times relevant hereto, beginning on or around March 10, 2020, and continuing at least through the date hereof, Defendants received income derived from a pattern of racketeering activity to use or invest a part of such income or the proceeds of such income in the establishment and operation of an enterprise that is engaged in, or the activities of which affect, interstate or foreign commerce, in violation of 18 U.S.C. § 1962(a).

163.  As alleged in the preceding section, on or around March 10, 2020, the Martinez Enterprise was formed to effectuate Defendants' pattern of racketeering activity.

164.   All Defendants agreed to and did use income received directly from a pattern of racketeering activity to control, establish, and operate the Martinez Enterprise, which was engaged in and affected interstate commerce, including wire fraud as defined by 18 U.S.C. § 1343, and for the unlawful purpose of intentionally defrauding USSC.

165.   The wire fraud committed by Defendants is set forth in Count I and is incorporated by reference herein.

166.   As a direct and proximate consequence of the conduct of Defendants and each of them as alleged herein, USSC has been injured in its business and property, causing USSC to suffer monetary damages in an amount not less than $1.8 million, said damages to be proven at the time of trial.

167.   Because of Defendants' violations of 18 U.S.C. § 1962(a), Defendants are liable to USSC for three times the damages USSC has sustained, plus the cost of this suit, including reasonable attorneys' fees.

## COUNT III

## Federal RICO 18 U.S.C. § 1962(d)

### (as to All Defendants)

168.   Plaintiff USSC incorporates by reference and realleges paragraphs 1 through 167 set forth above.

169.   18 U.S.C. § 1962(d) makes it "unlawful for any person to conspire to

violate any of the provisions of subsection (a), (b) or (c) of this section."

170.   As alleged in Counts I and II, each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3).

171.   At all relevant times, beginning in or around March 10, 2020, and continuing at least through the date hereof, the Defendants agreed to and did conspire to violate 18 U.S.C. §§ 1962 (a) and (c), as alleged above and incorporated herein, in violation of 18 U.S.C. § 1962(d). The object of this conspiracy has been and is to conduct or participate in, directly or indirectly, the conduct of the affairs of the enterprise described above; and to receive income derived from a pattern of racketeering activity and to use such income or the proceeds of such income in the establishment and operation of that enterprise.

172.   Defendants have knowingly, willfully, and intentionally conspired and agreed to conduct and participate in the conduct of the affairs of the enterprise described previously through a pattern of racketeering activity that includes wire fraud.

173.   Defendants have knowingly, willfully, and intentionally conspired and agreed to receive income derived from a pattern of racketeering activity that includes wire fraud and to use such income or the proceeds of such income in the establishment and operation of the enterprise described previously.

174.   Defendants knew that their actions as alleged above were part of a

pattern of racketeering activity and agreed to the commission of those acts to further the conspiratorial scheme described above.

175.   Defendants' conduct constitutes a conspiracy to violate 18 U.S.C. §§ 1962(c) and (a), in violation of 18 U.S.C. § 1962(d).

176.   As a direct and proximate consequence of the Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), USSC has been injured in its business and property, causing USSC to suffer monetary damages in an amount not less than $1.8 million, said damages to be proven at the time of trial.

177.   Because of Defendants' violations of 18 U.S.C. § 1962(d), Defendants are liable to USSC for three times the damages USSC has sustained, plus the cost of this suit, including reasonable attorneys' fees.

## COUNT IV

### Conspiracy

### (as to All Defendants)

178.   Plaintiff USSC incorporates by reference and realleges paragraphs 1 through 177 set forth above.

179.   "A conspiracy upon which a civil action for damages may be founded is a combination between two or more persons either to do some act which is a tort, or else to do some lawful act by methods which constitute a tort. The gist of the

action, if a cause of action exists, is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage." *Cook v. Robinson*, 216 Ga. 328, 329, 116 SE2d 742 (1960).

180.   Reasonable people, including a jury, could conclude, based on the facts alleged, that the Defendants engaged in a conspiracy and that the sole purpose of the conspiracy was to defraud USSC.

181.   Defendants engaged in multiple predicate acts as part of the conspiracy, including, but not limited to the following:

(i)     One such act took place on February 22, 2023, when Martinez formed Compass for fraudulent purposes.

(ii)    Another such act took place on March 17, 2023, when Compass, L&J, and Martinez fraudulently obtained the first of The Frog Loans.

(iii)   Another such act took place on June 28, 2023, when Martinez formed Development for fraudulent purposes.

(iv)    Another such act took place on July 10, 2023, when Compass, L&J, and Martinez fraudulently obtained the second of The Frog Loans.

(v)     Another such act took place on July 24, 2023, when Castrillo acquired title to the 2021 Lamborghini Urus using funds misappropriated from The Frog Loans and from other lenders.

(vi)    Another such act took place on December 29, 2023, and again on

54

January 3, 2024, when Martinez falsely and fraudulently represented to USSC that Compass had paid $66,000 to USSC to cure the payment defaults of Compass and L&J in November and December 2023.

(vii)  Another such act took place on February 2, 2024, when Compass fraudulently transferred title to Jennings Mill to 7th Year.

(viii)  Another such act took place on February 2, 2024, when R&A and Raimondi effectuated the fraudulent transfer of title from Compass to 7th Year.

(ix)   Another such act took place on multiple occasions when Conquest, Compass, L&J, and Martinez submitted fraudulent financial statements to USSC.

(x)    Another such act took place on multiple occasions when Golf and Castrillo submitted fraudulent invoices and receipts to Compass and The Frog.

(xi)   Another such act took place on multiple occasions when Development funded its operations with proceeds Martinez misappropriated from The Frog Loans and from other lenders.

(xii)  Another such act took place when Compass, L&J, and Martinez retained physical possession of all of the certificates representing Martinez's beneficial ownership of the equity securities of Compass and L&J under the First and Second Securities Pledge Agreements and failed to deliver these certificates to USSC.

(xiii)  nother such act took place when Compass, L&J, and Martinez

fraudulently shifted certain expense items to The Frog from the other golf courses controlled by Martinez, with the purpose of propping up the financial performance of the other golf courses to the detriment of The Frog's financial performance.

(xiv)  Another such act took place when one or more John Does unlawfully removed physical assets located at and belonging to The Frog to other golf clubs controlled by Martinez to reduce The Frog's value and enhance the value of the other golf clubs.

(xv)  Another such act took place when Martinez diverted and misappropriated funds belonging to The Frog to fund the expenses of the other golf courses. Another such act took place when Martinez attempted to hold a March 20, 2024 auction sale of Lane Creek and Gwinnett, despite the fact that Martinez did not have the authority to authorize these sales as a result of his defaults under the First and Second Securities Pledge Agreements.

(xvi)  Another such act took place when R&A and Raimondi affixed a disclaimer to the Limited Warranty Deeds stating, "DEED PREPARATION ONLY NO TITLE EXAMINATION PERFORMED," when they might have indeed performed a title examination, and/or had full knowledge of the judgments against Conquest, and intended for the above disclaimers to insulate them from liability as co-conspirators in the Martinez Funding Scheme.

182.    The acts associated with the aforementioned elements of the conspiracy were tortious in nature.

183.    Defendants inflicted great harm upon USSC through their predicate acts.

184.    USSC sustained loss and damage as the proximate result thereof.

185.    As a direct and proximate consequence of the conduct of Defendants, and each of them as alleged herein, USSC has been injured in its business and property, causing USSC to suffer monetary damages in an amount not less than $1,800,000, said damages to be proven at the time of trial.

186.    Because of Defendants' conspiracy as described herein, Defendants are liable to USSC for costs and disbursements and reasonable attorneys' fees.

187.    Defendants' conduct as alleged above was done in furtherance of their own private interests, and was willful, malicious, wanton, and oppressive, and done with conscious and callous indifference to the consequences and with specific intent to harm. Accordingly, USSC is entitled to an award of punitive damages from Defendants and each of them in an amount to be proven at trial and sufficient to punish, penalize and deter Defendants from engaging in such conduct in the future.

## COUNT V

### Actual Fraud

### (as to All Defendants)

188.   Plaintiff USSC incorporates by reference and realleges paragraphs 1 through 187 set forth above.

189.   In relevant part, O.C.G.A. § 23-2-51 provides that "[a]ctual fraud consists of any kind of artifice by which another is deceived. . . . Actual fraud implies moral guilt . . .."

190.   The artifice by which USSC was deceived consisted of a Scheme through which the Defendants Compass, L&J, Martinez, Golf, 7th Year, Conquest, Development, A&J, Castrillo, R&A, Raimondi, and John Doe Numbers 1-5, acting individually and in concert, engaged in the following unlawful and fraudulent acts:

(i)   One such act took place on February 22, 2023, when Martinez formed Compass for fraudulent purposes.

(ii)   Another such act took place on March 17, 2023, when Compass, L&J, and Martinez fraudulently obtained the first of The Frog Loans.

(iii)   Another such act took place on June 28, 2023, when Martinez formed Development for fraudulent purposes.

(iv)   Another such act took place on July 10, 2023, when Compass, L&J, and Martinez fraudulently obtained the second of The Frog Loans.

(v)    Another such act took place on July 24, 2023, when Castrillo acquired title to the 2021 Lamborghini Urus using funds misappropriated from The Frog Loans and from other lenders.

(vi)    Another such act took place on December 29, 2023, and again on January 3, 2024, when Martinez falsely and fraudulently represented to USSC that Compass had paid $66,000 to USSC to cure the payment defaults of Compass and L&J in November and December 2023.

(vii)    Another such act took place on February 2, 2024, when Compass fraudulently transferred title to Jennings Mill to 7th Year.

(viii)    Another such act took place on February 2, 2024, when R&A and Raimondi effectuated the fraudulent transfer of title from Compass to 7th Year.

(ix)    Another such act took place on multiple occasions when Conquest, Compass, L&J, and Martinez submitted fraudulent financial statements to USSC.

(x)    Another such act took place on multiple occasions when Golf and Castrillo submitted fraudulent invoices and receipts to Compass and The Frog.

(xi)    Another such act took place on multiple occasions when Development funded its operations with proceeds Martinez misappropriated from The Frog Loans and from other lenders.

(xii)    Another such act took place when Compass, L&J, and Martinez retained physical possession of all of the certificates representing Martinez's

beneficial ownership of the equity securities of Compass and L&J under the First and Second Securities Pledge Agreements and failed to deliver these certificates to USSC.

(xiii) Another such act took place when Compass, L&J, and Martinez fraudulently shifted certain expense items to The Frog from the other golf courses controlled by Martinez, with the purpose of propping up the financial performance of the other golf courses to the detriment of The Frog's financial performance.

(xiv)  Another such act took place when one or more John Does unlawfully removed physical assets located at and belonging to The Frog to other golf clubs controlled by Martinez to reduce The Frog's value and enhance the value of the other golf clubs.

(xv)  Another such act took place when Martinez diverted and misappropriated funds belonging to The Frog to fund the expenses of the other golf courses. Another such act took place when Martinez attempted to hold a March 20, 2024 auction sale of Lane Creek and Gwinnett, despite the fact that Martinez did not have the authority to authorize these sales as a result of his defaults under the First and Second Securities Pledge Agreements.

(xvi) Another such act took place when R&A and Raimondi affixed a disclaimer to the Limited Warranty Deeds stating, "DEED PREPARATION ONLY NO TITLE EXAMINATION PERFORMED," when they might have indeed

performed a title examination, and/or had full knowledge of the judgments against Conquest, and intended for the above disclaimers to insulate them from liability as co-conspirators in the Martinez Funding Scheme.

191.    At all relevant times Defendants had knowledge that they were deceiving USSC.

192.    As a direct and proximate consequence of the conduct of Defendants, and each of them as alleged herein, USSC has been injured in its business and property, causing USSC to suffer monetary damages in an amount not less than $1,800,000, said damages to be proven at the time of trial.

193.    Because of Defendants' frauds as described herein, Defendants are liable to USSC for costs and disbursements and reasonable attorneys' fees.

194.    Defendants' conduct as alleged above was done in furtherance of their own private interests, and was willful, malicious, wanton, and oppressive, and done with conscious and callous indifference to the consequences and with specific intent to harm. Accordingly, USSC is entitled to an award of punitive damages from Defendants and each of them in an amount to be proven at trial and sufficient to punish, penalize and deter Defendants from engaging in such conduct in the future.

## **COUNT VI**

## **DECEIT**

## **(as to All Defendants)**

195.   Plaintiff USSC incorporates by reference and realleges paragraphs 1 through 194 set forth above.

196.   Under O.C.G.A. § 51-6-2, willful misrepresentation of a material fact, made to induce another to act, upon which such person acts to his injury, will give USSC a right of action for deceit.

197.   Under O.C.G.A. § 51-6-2(b), in all cases of deceit, knowledge of the falsehood constitutes an essential element of the tort. A fraudulent or reckless representation of facts as true when they are not if intended to deceive, is equivalent to a knowledge of their falsehood even if the party making the representation does not know that such facts are false.

198.   To prove the tort of deceit, the injured party must show that (i) the defendant made deceitful representations to the injured party; (ii) at the time such representations were made the defendant knew the representations were false or were made with reckless disregard as to their truth or falsity; (iii) the defendant made the representations with the intention and purpose of deceiving the injured party; (iv) the injured party reasonably relied upon such representations; and (v) the injured party sustained the alleged loss and damage as the proximate result of the representations having been made.

199.   Defendants engaged in multiple acts of deceit, including the following:

(i)      One such act took place on February 22, 2023, when Martinez formed

62

Compass for deceitful purposes.

(ii)    Another such act took place on March 17, 2023, when Compass, L&J, and Martinez fraudulently obtained the first of The Frog Loans.

(iii)    Another such act took place on June 28, 2023, when Martinez formed Development for deceitful purposes.

(iv)    Another such act took place on July 10, 2023, when Compass, L&J, and Martinez fraudulently obtained the second of The Frog Loans.

(v)    Another such act took place on July 24, 2023, when Castrillo acquired title to the 2021 Lamborghini Urus using funds misappropriated from The Frog Loans and from other lenders.

(vi)    Another such act took place on December 29, 2023, and again on January 3, 2024, when Martinez deceitfully represented to USSC that Compass had paid $66,000 to USSC to cure the payment defaults of Compass and L&J in November and December 2023.

(vii)    Another such act took place on February 2, 2024, when Compass fraudulently transferred title to Jennings Mill to 7th Year.

(viii)    Another such act took place on February 2, 2024, when R&A and Raimondi effectuated the transfer of title from Compass to 7th Year for deceitful purposes.

(ix)    Another such act took place on multiple occasions when Conquest,

Compass, L&J, and Martinez submitted fraudulent financial statements to USSC.

(x)     Another such act took place on multiple occasions when Golf and Castrillo submitted fraudulent invoices and receipts to Compass and The Frog.

(xi)    Another such act took place when Compass, L&J, and Martinez retained physical possession of all of the certificates representing Martinez's beneficial ownership of the equity securities of Compass and L&J under the First and Second Securities Pledge Agreements and failed to deliver these certificates to USSC.

(xii)   Another such act took place when Compass, L&J, and Martinez fraudulently shifted certain expense items to The Frog from the other golf courses controlled by Martinez, with the purpose of propping up the financial performance of the other golf courses to the detriment of The Frog's financial performance.

(xiii)  Another such act took place when one or more John Does unlawfully removed physical assets located at and belonging to The Frog to other golf clubs controlled by Martinez to reduce The Frog's value and enhance the value of the other golf clubs.

(xiv)   Another such act took place when Martinez diverted and misappropriated funds belonging to The Frog to fund the expenses of the other golf courses.

(xv)    Another such act took place when Martinez attempted to hold a March

20, 2024 auction sale of Lane Creek and Gwinnett, despite the fact that Martinez did not have the authority to authorize these sales as a result of his defaults under the First and Second Securities Pledge Agreements.

(xvi) Another such act took place when R&A and Raimondi affixed a disclaimer to the Limited Warranty Deeds stating, "DEED PREPARATION ONLY NO TITLE EXAMINATION PERFORMED," when they might have indeed performed a title examination, and/or had full knowledge of the judgments against Conquest, and intended for the above disclaimers to insulate them from liability as co-conspirators in the Martinez Funding Scheme.

200. At all relevant times Defendants had knowledge that they were deceiving USSC.

201. As a direct and proximate consequence of the conduct of Defendants, and each of them as alleged herein, USSC has been injured in its business and property, causing USSC to suffer monetary damages in an amount not less than $1,800,000, said damages to be proven at the time of trial.

202. Because of Defendants' deceit as described herein, Defendants are liable to USSC for costs and disbursements and reasonable attorneys' fees.

203. Defendants' conduct as alleged above was done in furtherance of their own private interests, and was willful, malicious, wanton, and oppressive, and done with conscious and callous indifference to the consequences and with specific intent

65

to harm. Accordingly, USSC is entitled to an award of punitive damages from Defendants and each of them in an amount to be proven at trial and sufficient to punish, penalize and deter Defendants from engaging in such conduct in the future.

## COUNT VII

### Breach of Loan Agreements and Notes

### (as to Defendants Compass and L&J)

204.   Plaintiff USSC incorporates by reference and realleges paragraphs 1 through 203 set forth above.

205.   USSC and Compass and L&J entered into the First Loan Agreement on March 17, 2023, and the Second Loan Agreement on July 10, 2023 (collectively, the "Loan Agreements").

206.   USSC and Compass and L&J entered into the First Note on March 17, 2023, and the Second Note on July 10, 2023 (collectively, the "Notes").

207.   The Loan Agreements and the Notes are valid and enforceable agreements.

208.   In reliance upon the Loan Agreements and the Notes, USSC loaned Compass and L&J $4,100,000 in return for the promise by Compass and L&J to repay the loans in full with interest thereon in accordance with the terms thereof.

209.   Compass and L&J defaulted under the terms of the Loan Agreements and the Notes by failing to pay the accrued interest, default interest, monitoring fees,

and late payment fees due and owing to USSC in November 2023, December 2023, and January 2024.

210.    Compass and L&J ignored USSC's written demands to cure the defaults.

211.    USSC declared the entirety of the loans immediately due and payable and, under and by virtue of a Power of Sale contained in the Deeds to Secure Debt, commenced a nonjudicial foreclosure of The Frog. This foreclosure was consummated with a public auction at which USSC, as the sole bidder, purchased The Frog for $2.7 million and obtained a Deed Under Power of Sale.

212.    As a direct and proximate consequence of the conduct of Compass and L&J, and each of them as alleged herein, USSC has been injured in its business and property, causing USSC to suffer monetary damages in an amount not less than $1,800,000, said damages to be proven at the time of trial following confirmation under O.C.G.A. § 44-14-161.

213.    Because of the breaches of the contracts described herein, Compass and L&J are liable to USSC for costs and disbursements and reasonable attorneys' fees.

## COUNT VIII

### Breach of Personal Guaranty Agreements

### (as to Defendant Martinez)

214.    Plaintiff USSC incorporates by reference and realleges paragraphs 1

through 213 set forth above.

215.   The First Personal Guaranty Agreement and the Second Personal Guaranty Agreement (the "Personal Guaranty Agreements") are valid and enforceable contracts.

216.   Under the Personal Guarantees, Martinez has guaranteed (i) the full, prompt, and faithful payment of all debt, principal, interest, and other amounts owed to USSC by Compass and L&J pursuant to the Loan Documents or any other agreement, whether absolute or contingent, due or to become due, now existing or hereafter arising, including, but not limited to the reasonable costs or expenses (including attorneys' fees and expenses) actually incurred in connection with the enforcement of the Loan Documents, whether or not suit is brought, and (ii) the performance and discharge by Compass and L&J of all the terms, warranties, conditions, and provisions of the First Loan Agreement (collectively, the "Guaranteed Obligations").

217.   As a result of Compass and L&J's default under the Loan Agreements and the Notes, Martinez is obligated to pay USSC the Guaranteed Obligations, plus interest and costs of collection, pursuant to the Guaranty.

218.   USSC has demanded that Martinez pay USSC the Guaranteed Obligations, plus interest and costs of collection, pursuant to the Guarantees, but Martinez has failed and refused to do so.

219.    As a direct and proximate consequence of the conduct of Martinez as alleged herein, USSC has been injured in its business and property, causing USSC to suffer monetary damages in an amount not less than $1,800,000, said damages to be proven at the time of trial following confirmation under O.C.G.A. § 44-14-161.

220.    Because of the breaches of the contracts described herein, Martinez is liable to USSC for costs and disbursements and reasonable attorneys' fees.

## COUNT IX

### Breach of Securities Pledge Agreements

### (as to Defendants Compass, L&J and Martinez)

221.    Plaintiff USSC incorporates by reference and realleges paragraphs 1 through 220 set forth above.

222.    The Securities Pledge Agreements are valid and enforceable contracts.

223.    Martinez is the beneficial owner of all of the equity securities issued by Compass and L&J under the Securities Pledge Agreements.

224.    Compass and L&J and Martinez failed to satisfy their obligations under the Securities Pledge Agreements by delivering to USSC the Membership Certificates, together with properly executed securities powers endorsed by Martinez in blank.

225.    Under Securities Pledge Agreements, USSC has full power and authority upon an Event of Default to sell all of the equity securities issued to

Martinez by Compass and L&J, with or without any previous demands or demand of performance or, to the extent permitted by law, notice or advertisement, either at public or private sale on such terms and price as USSC may reasonably deem commercially fair free from any claim or right of redemption by Compass, L&J, or Martinez.

226.   Pursuant to the terms of the Securities Pledge Agreements, USSC is entitled to exclusive possession of the Membership Certificates.

227.   USSC demanded that Compass, L&J, and Martinez deliver possession of the Membership Certificates, but Compass, L&J, and Martinez failed and refused to do so.

228.   As a direct and proximate consequence of the conduct of Compass, L&J, and Martinez as alleged herein, USSC has been injured in its business and property, causing USSC to suffer monetary damages in an amount not less than $1,800,000, said damages to be proven at the time of trial following confirmation under O.C.G.A. § 44-14-161.

229.   Because of the breaches of the contracts described herein, Compass, L&J, and Martinez are liable to USSC for costs and disbursements and reasonable attorneys' fees.

## COUNT X

**Fraudulent Transfer**

**(as to Defendant Martinez, Compass, 7ᵗʰ Year, R&A, and Raimondi)**

230.   Plaintiff USSC incorporates by reference and realleges paragraphs 1 through 229 set forth above.

231.   On February 2, 2024, Defendant Martinez, on behalf of Defendant Compass executed a Limited Warranty Deed, recorded February 5, 2024 at Deed Book 1761, Pages 424-440, Oconee County, Georgia records conveying Jennings Mill to 7ᵗʰ Year for nominal consideration.

232.   At the time Defendant Compass transferred Jennings Mill to 7ᵗʰ Year, Compass had defaulted under the Loan Agreements, Notes, and Security Deeds and had been advised by USSC that it intended to sue Compass for damages.

233.   R&A and Raimondi prepared the Limited Warranty Deed.

234.   Compass transferred Jennings Mill to 7ᵗʰ Year to render Compass insolvent.

235.   R&A and Raimondi knew that transferring Jennings Mill to 7ᵗʰ was intended to render Compass insolvent.

236.   Compass transferred Jennings Mill to 7ᵗʰ Year with the intent to hinder, delay, and defraud its creditors pursuant to 11 U.S.C. § 548.

237.   R&A and Raimondi knew that Compass was transferring Jennings Mill to 7ᵗʰ Year with the intent to hinder, delay and defraud its creditors pursuant to 11 U.S.C. § 548.

238. As a direct and proximate consequence of the conduct of Compass as alleged herein, USSC has been injured in its business and property, causing USSC to suffer monetary damages in an amount not less than $1,800,000, said damages to be proven at the time of trial.

239. Because of Defendants' deceit as described herein, Defendants are liable to USSC for costs and disbursements and reasonable attorneys' fees.

240. Defendants' conduct as alleged above was done in furtherance of their own private interests, and was willful, malicious, wanton, and oppressive, and done with conscious and callous indifference to the consequences and with specific intent to harm. Accordingly, USSC is entitled to an award of punitive damages from Defendants and each of them in an amount to be proven at trial and sufficient to punish, penalize and deter Defendants from engaging in such conduct in the future.

## COUNT XI

### ATTORNEYS FEES AND EXPENSES OF LITIGATION

### (As to All Defendants)

241. Plaintiff USSC incorporates by reference and realleges paragraphs 1 through 239 set forth above.

242. Defendants have acted in bad faith, have been stubbornly litigious, and have caused USSC unnecessary trouble and expense in forcing it to bring this suit to recover the damages it has incurred because of Defendants' actions.

243.  As a result, USSC is entitled to recover its expenses of litigation, including its reasonable attorneys' fees under 28 U.S.C. § 2412(b).

## PRAYER FOR RELIEF

For the reasons set forth above, USSC is entitled to be granted judgment in its favor against Defendants providing as follows:

A.    On Count I, enter judgment against Defendants, jointly and severally, under 18 U.S.C. § 1964(a), and award USSC three times the damages USSC has sustained and prejudgment interest, plus the cost of this suit, including reasonable attorneys' fees.

B.    On Count II, enter judgment against Defendants, jointly and severally, under 18 U.S.C. § 1962(c), and award USSC three times the damages USSC has sustained and prejudgment interest, plus the cost of this suit, including reasonable attorneys' fees.

C.    On Count III, enter judgment against Defendants, jointly and severally, under 18 U.S.C. § 1962(d), and award USSC three times the damages USSC has sustained and prejudgment interest, plus the cost of this suit, including reasonable attorneys' fees.

D.    On Count IV, enter judgment against Defendants, jointly and severally, for conspiracy, and award USSC monetary damages of not less than $1.8 million

and prejudgment interest, plus the cost of this suit, including reasonable attorneys' fees.

E.    On Count V, enter judgment against Defendants, jointly and severally, for fraud, and award USSC monetary damages of not less than $1.8 million and prejudgment interest, plus the cost of this suit, including reasonable attorneys' fees.

F.    On Count VI, enter judgment against Defendants, jointly and severally, for deceit, and award USSC monetary damages of not less than $1.8 million and prejudgment interest, plus the cost of this suit, including reasonable attorneys' fees.

G.    On Count VII, enter judgment against Compass and L&J, jointly and severally, for breach of the Loan Agreements and Notes, and award USSC monetary damages of not less than $1.8 million and prejudgment interest, plus the cost of this suit, including reasonable attorneys' fees.

H.    On Count VIII, enter judgment against Martinez for breach of the Personal Guaranty Agreements, and award USSC monetary damages of not less than $1.8 million and prejudgment interest, plus the cost of this suit, including reasonable attorneys' fees.

I.    On Count IX, enter judgment against Compass, L&J, and Martinez, jointly and severally, for breach of the Securities Pledge Agreements, and award USSC monetary damages of not less than $1.8 million and prejudgment interest, plus the cost of this suit, including reasonable attorneys' fees.

J.    On Count X, enter judgment against Compass, 7th Year, Martinez, R&A, and Raimondi, jointly and severally,  for the fraudulent transfer of Jennings Mill from Compass to 7th Year, and award USSC monetary damages of not less than $1.8 million and prejudgment interest, plus the cost of this suit, including reasonable attorneys' fees.

K.    On Count XI, enter judgment against Defendants, jointly and severally, under 28 U.S.C. § 2412(b) for USSC's expenses of litigation, including its reasonable attorneys' fees.

L.    Award $10,000,000 in punitive damages against Defendants, or an amount otherwise to be decided by a jury, for Defendants' illegal and fraudulent actions to punish, penalize and deter Defendants from engaging in such conduct in the future.

M.    Such other and further relief as this Court deems just and proper.

Respectfully submitted this the 3rd day of April 2024.

**ROBERT ARKIN LLC d/b/a**
**ARKIN.LAW**

By: /s/ Robert Arkin
        Robert Arkin
        Georgia Bar No. 021575
        Attorney for Plaintiff

6075 Barfield Road, Suite 226
Atlanta, GA 30328-4402

Phone: 404-220-8500
Fax: 855-804-9334
Email: robert@arkin.law

## VERIFICATION

I, Derek Cunningham, declare as follows:

1.    I am the Managing Member of USSC.

2.    I have personal knowledge of USSC and its activities, including those set out in the foregoing Verified Complaint for Racketeering, Civil Conspiracy, Fraud, Deceit, Breach Of Contract, and Fraudulent Transfer, and if called upon to testify, I would competently testify as to the matters stated herein.

3.    I verify that the factual statements in this Complaint are true and correct, and that the allegations therein are true and correct to the best of my knowledge, information, and belief.

4.    I do solemnly declare and affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. 28 U.S.C. § 1746.

Executed on March 29, 2024.

Derek Cunningham